**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**J. DOYLE GOODMAN and
LANA L. GOODMAN,**

       **Plaintiffs,**

v.                                                                                          **Case No. 3:06cv93/MCR/EMT**

**FIDELITY NATIONAL PROPERTY
& CASUALTY INSURANCE COMPANY,**

       **Defendant.**
_____/

<u>**ORDER GRANTING SUMMARY JUDGMENT**</u>

      In this insurance dispute plaintiffs J. Doyle Goodman and Lana L. Goodman ("plaintiffs") sue Fidelity National Property & Casualty Insurance Company ("Fidelity"). Presently before the court are plaintiffs' motion for partial summary judgment, Fidelity's cross motion for summary judgment, and the parties' respective responses.[1] The court heard oral argument on the motions on March 15, 2007. Upon consideration of the parties' written and oral arguments and for the reasons given below, the court GRANTS Fidelity's motion for summary judgment, DENIES plaintiffs' motion for partial summary judgment, and DISMISSES plaintiffs' claims with prejudice.

**BACKGROUND**

      The following facts are recited in the light most favorable to plaintiffs or, except as

---

1 <u>See</u> docs. 23 (plaintiffs' motion and supporting memorandum, exhibits), 24-26, 28 (plaintiffs' evidentiary materials), 27 (Fidelity's motion), 29 (Fidelity's memorandum), 36 (plaintiffs' response), 37 (Fidelity's response), and 38, 41, 46 (Fidelity's notices of additional authority).

noted, are undisputed.[2] Hurricane Ivan struck the Northwest Florida area on or about September 16, 2004. On that date plaintiffs' dwelling located on Perdido Bay in Pensacola, Florida, was insured by Standard Flood Insurance Policy ("SFIP") No. 09-7700117028-02, issued by Fidelity.[3] Following the hurricane plaintiffs made a claim for flood damage under the policy and, as a courtesy, Fidelity assigned an independent adjuster to assist plaintiffs with their claim. Based on the adjuster's initial and supplemental estimates of the damages to the building and contents, on January 4, 2005, Fidelity issued several checks to plaintiffs totaling $68,648.35.  In light of Fidelity's concern, however, that an elevation restriction might apply to the building which the adjuster had not taken into consideration, on the same day that the checks were issued Fidelity had the property inspected by an engineer. Based on the engineer's report Fidelity concluded that plaintiffs' SFIP did not cover all of their claimed losses and, on January 6, 2005, placed stop-payment holds on the checks before plaintiffs could cash them.  The adjuster subsequently submitted a revised estimate of plaintiffs' losses to Fidelity.[4]  In March 2005 Fidelity denied plaintiffs' claim for any damages to contents or the building below the base flood elevation and determined that

---

2 At summary judgment this court must view the facts in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

3 The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq., established the National Flood Insurance Program ("NFIP"). The Federal Emergency Management Agency ("FEMA"), which is charged with administering the NFIP, by regulation has promulgated the SFIP and provided for marketing and claims adjustment by private insurers operating as "Write-Your-Own" ("WYO") companies. 44 C.F.R. § 62.23. The WYO companies issue SFIPs in their own names as insurer, and they arrange for the adjustment, settlement, payment and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. See  § 61.13(f); § 62.23(d); see also Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998). Thus in issuing SFIPs WYO companies act as the fiscal agent of the United States government. See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1316 (11th Cir. 2003).
   Plaintiffs' SFIP reflects coverage limits of $250,000 for losses to the building and $100,000 for losses to contents.  (See doc. 1 at 5).

4 The initial and supplemental forms submitted to Fidelity by the adjuster were identified as  "Proof of Loss" statements but plaintiffs acknowledge that they neither swore to nor signed either of the forms. Similarly, although the revised estimate was also in the form of a document entitled "Proof of Loss," it was not signed or sworn to by plaintiffs.

Case No. 3:06cv93/MCR/EMT

$10,305.00 was due for building losses and recoverable depreciation, which amount it paid to plaintiffs.  Plaintiffs demanded additional amounts under their policy for flood damage caused by Hurricane Ivan but state that in May 2005 they received a letter from Fidelity denying their claims.

Plaintiffs filed this suit in March 2006.  They allege that Fidelity breached the SFIP by wrongfully denying coverage, failing and refusing to pay insurance proceeds, failing to adjust their claim properly or to acknowledge the extent of their damages, and undervaluing the damage to their property.[5]  The issues raised in plaintiffs' motion for partial summary judgment and Fidelity's motion for summary judgment are essentially the same.  In both motions the threshold issue[6] is whether plaintiffs timely filed a proof of loss in compliance with the provisions of their SFIP and the waiver granted by FEMA's Acting Federal Insurance Administrator David I. Maurstad's September 24, 2004, memorandum.[7]

---

5 By stipulation filed November 16, 2006, the parties agreed that plaintiffs would withdraw their request for a jury trial and their request for prejudgment interest. (Doc. 22).

6 Additionally at issue in plaintiffs' motion is whether the SFIP provides coverage for damages to the lower portion of their home and for debris removal. Because the threshold issue must be resolved in Fidelity's favor, however, thus barring plaintiffs from bringing this suit, the court does not reach these issues.

7 Mr. Maurstad's memorandum, which is entitled "Subject: Waiver of the Proof of Loss Requirement in the Standard Flood Insurance Policy (SFIP)," in its entirety provides:

> Recently, a number of States experienced catastrophic losses as a result of three hurricanes (Charley, Frances, and Ivan) within the span of a few weeks, and a fourth hurricane (Jeanne) is about to make landfall on the Southeast coast. As a result, there is a shortage of qualified adjusters available to adjust the losses resulting from these hurricanes. So, there is an urgent need to expedite claims payments to policyholders.
>
> To expedite claims payments so that policyholders affected by these circumstances are not subject to undue hardship, I am waiving the requirement in VII.J.4 of the SFIP Dwelling and General Property Forms and VIII.J.4 of the SFIP Residential Condominium Building Association Policy Form for the policyholder to file a proof of loss prior to receiving insurance proceeds. Instead, payment of the loss will be based on the evaluation of damage in the adjuster's report. This means the requirement in VII.M.1 and VIII.M.1 that losses will be payable 60 days after the insurer receives the policyholder's proof of loss (or within 90 days after the adjuster files a report signed and sworn to by the policyholder in lieu of a proof of loss) will not apply. Instead, the loss will be payable as soon as practicable after the insurer receives the adjuster's report. This procedure will allow the insurer to promptly adjust, settle, and pay claims based on the adjuster's report. Also, under the terms of this waiver, the

## DISCUSSION

The SFIP issued to plaintiff by Fidelity requires that the insured submit proof of loss to the company in the form of a signed and sworn statement of the amount claimed under the policy.[8] The proof of loss must be presented within sixty days after the loss and must

---

> following sections will not apply: VII.J.7, J.9, and M.2.c of the SFIP Dwelling and General Property Forms and VIII.J.7, J.9, and M.2.c of the SFIP Residential Condominium Building Association Policy Form.
>
> In the event a policy holder disagrees with the insurer's adjustment, settlement, or payment of the claim, a policyholder may submit to the insurer a proof of loss within one year from the date of the loss. The proof of loss must meet the requirements of VII.J.4 of the SFIP Dwelling or General Property Form or VII.J.4 of the SFIP Residential Condominium Building Association Policy Form. The insurer will then process the policyholder's proof of loss in its normal fashion. If the insurer rejects the proof of loss in whole or in part, the policyholder may file a lawsuit against the insurer within one year of the date of the written denial of all or part of the claim as provided in VII.R of the SFIP Dwelling or General Property Form or VIII.R of the SRIP Residential Condominium Building Association Policy Form. For example, a policyholder who suffered a flood loss from Hurricane Charley on August 14, 2004, and disagrees with the insurer's decision based on the adjuster's report, has until August 13, 2005, to file the proof of loss detailing the area(s) of disagreement. A policyholder who suffered a flood loss from Hurricane Frances on September 7, 2004, has until September 6, 2005, to file the proof of loss detailing the area(s) of disagreement, and those who suffered a flood loss from Hurricane Ivan on September 24 have until September 23, 2005, to file a proof of loss detailing the area(s) of disagreement.
>
> This waiver is pursuant to the provisions dealing with amendments, waivers, and assignments of the SFIP (VII.D. of the SFIP Dwelling Form and General Property Form and VIII.D. of the SFIP Residential Condominium Building Association Policy Form). Since the adjuster availability problem will affect not only claims from the three hurricanes referred to above, but also any other flood events that may occur while the adjustment of claims from those hurricanes is ongoing, this waiver applies to all claims arising on August 12, 2004, and thereafter until December 31, 2004.

(See doc. 36-5).

8 Section J.4 of Article VII of plaintiffs' SFIP in part requires that the insured:

> 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
>    a. The date and time of loss;
>    b. A brief explanation of how the loss happened;
>    c. Your interest (for example, "owner") and the interest, if any, of other in the damaged property;
>    d. Details of any other insurance that may cover the loss;

Case No. 3:06cv93/MCR/EMT

provide specific information necessary for the insurance company to process the claim. Further, the policy provides that as a courtesy the adjuster hired by the insurance company may furnish the insured with a proof of loss form and assist with its completion; however, the policy cautions that even if the adjuster does not provide the form or any assistance the insured must nevertheless timely send the company proof of loss.[9] Additionally, under the SFIP an insured may not file suit for coverage unless he has complied with all requirements of the policy.[10]

Strict adherence to the proof of loss requirements is a condition precedent to recovery under a SFIP. See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1318 (11th Cir. 2003); Suopys v. Omaha Property and Casualty, 404 F.3d 805, 810 (3rd Cir. 2005); Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003); Mancini v. Redland Insurance Co., 248 F.3d 729, 733-34 (8th Cir. 2001). Substantial compliance is not sufficient; rather, an insured must completely satisfy the proof of loss requirements, including the requirement that the statement be signed and sworn, before an insured can receive

---

> e. Changes in title or occupancy of the covered property during the term of the policy;
> f. Specifications of damaged buildings and detailed repair estimates;
> g. Names of mortgagees or anyone else having a lien, charge, or claim against the insurance property;
> h. Details about who occupied any insured building at the time of loss and for what purpose; and
> i. The inventory of damaged personal property described in J.3. above.

Article VII.J.4. (See doc. 1 at 21).

9 Article VII.J.7. (See doc. 1 at 21).

10 Article VII.R , Suit Against Us, provides:

> You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

(Doc. 1 at 22).

Case No. 3:06cv93/MCR/EMT

benefits under a SFIP. See Sanz, 328 F.3d at 1317. The proof of loss requirements may be waived, but to be effective the waiver must be made by the Federal Insurance Administrator in writing. See id. at 1318-19; see also 44 C.F.R. §§ 61.13(d); 44 C.F.R. Pt. 61, App. A(1), Article VII.D.

In this case, notwithstanding that each of the reports prepared by the independent claims adjuster was completed on a "Proof of Loss" form, it is undisputed that none of the forms was signed or sworn to by plaintiffs, as required and defined by Article VII.J.4 of the SFIP.[11] Thus, contrary to a basic premise of plaintiffs' argument, the documents do not constitute proof of loss.[12] Also, as explained below, although Mr. Maurstad's memorandum waived the requirements of Article VII.J.4 that policyholders must sign, swear to, and submit proof of loss within sixty days of the loss, the waiver was not absolute but rather was limited in duration and scope.

The purpose of the second paragraph of the September 24, 2004, memorandum was to waive the requirement of proof of loss in order "to expedite claims payments" if the insured agreed with the adjuster's evaluation. Claims were to "be payable as soon as practicable after the insurer received the adjuster's report" rather than as long as sixty or ninety days as provided by the SFIP.

The third paragraph of the memorandum established the procedure to be followed if the insured disagreed with the adjuster's assessment:

---

[11] Plaintiffs do not contend, nor is there is any support for concluding, that the definition of "proof of loss" provided in Article VII.J.4 does not also apply to Article VII.M.2.c.

[12] Pointing to discretionary language in the memorandum, plaintiffs argue that the one year extension for filing proof of loss that was granted in the memorandum applies to the amended proof of loss referred to in Article VII.M.2.c of the SFIP, not to the "original" proof of loss referred to in Article VII.J.4. And, according to plaintiffs, the extension does not apply to them because they submitted proof of loss and then elected to exercise their rights under Article VII.M.2.b by filing this lawsuit. Article VII.M.2 provides:

> 2. If we reject your proof of loss in whole or in part you may:
>    a. Accept our denial of your claim;
>    b. Exercise your rights under this policy; or
>    c. File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

(Doc. 1 at 22).

Case No. 3:06cv93/MCR/EMT

> In the event a policyholder disagrees with the insurer's adjustment, settlement, or payment of the claim, a policyholder <u>may</u> submit to the insurer a proof of loss within one year from the date of the loss.

(<u>See</u> doc. 36-5 (emphasis added)).

The use of the word "may" in third paragraph of the waiver did not make the filing of a proof of loss statement permissive or optional. Rather, reading the memorandum in its entirety, the court concludes that a reasonable interpretation of this provision is that an insured who disagreed with the adjuster's report – or, as the memorandum specifically states, with the insurer's adjustment, settlement, or payment of the claim – had two choices: he could challenge the report, adjustment, settlement, or payment, in which case the insured was required to submit proof of loss, or he could disagree with but nevertheless accept the insurer's determination, in which case no proof of loss was required. In this case, while plaintiffs did not disagree with any of the adjuster's reports, because plaintiffs challenged Fidelity's ultimate adjustment and settlement of their claims they were required to file proof of loss within one year of the date of loss.

The example in the memorandum's fourth paragraph that those "who suffered a flood loss from Hurricane Ivan on September 24 [had] until September 23, 2005,[13] to file a proof of loss detailing the area[s] of disagreement" confirms that an insured choosing to contest an adjuster's evaluation was required to submit a proof of loss statement within one year of his loss. Had Mr. Maurstad intended to waive the proof of loss requirements for policyholders contesting an adjuster's evaluation this example would have been unnecessary. The waiver should not be interpreted in a manner that would render any part of it superfluous. <u>See</u> <u>Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n</u>, 117 F.3d 1328, 1338 (11th Cir. 1997) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.").

In short, plaintiffs were required to file a properly <u>signed</u> and <u>sworn</u> proof of loss

---

13 The court recognizes that Hurricane Ivan made landfall in the Pensacola area on September 16, 2004, but for many days thereafter also caused extensive flooding elsewhere in the Southeastern United States as the storm traveled inland.

Case No. 3:06cv93/MCR/EMT

statement no later than September 15, 2005, in order to preserve their right to sue. Because they failed to do so their suit is now barred in its entirety.[14]  As the evidence before the court shows that there is no genuine issue of material fact remaining for trial and that Fidelity is entitled to judgment as a matter of law, Fidelity's cross motion for summary judgment shall be granted and plaintiffs' motion for partial summary judgment shall be denied. Fed.R.Civ.P. 56; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Accordingly, it is ORDERED:

1. Defendant Fidelity National Property & Casualty Insurance Company's cross motion for summary judgment (doc. 27) is GRANTED and plaintiffs J. Doyle and Lana Goodman's motion for partial summary judgment (doc. 23) is DENIED.

2. Plaintiffs' claims are DISMISSED, with prejudice.

3. The clerk shall enter judgment accordingly.

4. Plaintiffs shall take nothing by this action and hence go without day.

5. Costs shall be taxed against plaintiffs.

**DONE and ORDERED** this 23rd day of May, 2007.

*s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

14  This conclusion is consistent with the decisions in Shuford v. Fidelity Property & Casalty Insurance Co., C.A. 05-0583-CG-B (S.D. Ala. December 18, 2006); Vanderveen v. Allstate Insurance Company, 3:05cv469/WS (N.D. Fla. January 29, 2007); Brown v. USAA General Indemnity Company, 3:06cv191/RS (N.D.Fla. February 9, 2007); Word v. USAA General Indemnity Company, 3:06cv303/RS (N.D.Fla. February 9, 2007; McKee v. USAA General Indemnity Company, 3:06cv156/MCR/EMT (N.D.Fla. April 26, 2007); and Loree v. Fidelity National Property & Casuality Insurance Company, 3:06cv250/MCR/EMT (N.D.Fla. May 15, 2007).